```
             IN THE UNITED STATES DISTRICT COURT FOR THE
                    SOUTHERN DISTRICT OF ALABAMA
                          SOUTHERN DIVISION
```

CLARENCE RASHAAD ADAMS, #275904,:

    Plaintiff,                    :

vs.                                : CIVIL ACTION 19-0105-JB-M

WARDEN TERRY RAYBON, *et al.*,     :

    Defendants.                  :

## REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a Complaint under 42 U.S.C. § 1983. This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R). It is recommended that this action be dismissed without prejudice, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.

I. <u>Nature of Proceedings</u>.

    A.  <u>Amended Complaint</u>. (Doc. 4).

The Complaint before the Court is a Court-ordered Amended Complaint. (Doc. 4). In it, Plaintiff sues as Defendants, Warden Terry Raybon, Lieutenant Regina Bolar, Warden Stewart, Officer Justin Culpepper, and Officer Bennet Junior, all of whom who are employed at Holman Correctional Facility (Holman). (*Id*.

at 7-9).

According to Plaintiff, on March 9, 2017, while he was in the television area of C-Dorm, a fight broke out between inmate Stephon Marshall and group of unidentified inmates. (*Id.* at 4). Plaintiff attempted to diffuse the situation but was stabbed when one of the inmates who was attacking Marshall pulled a knife and stabbed him. (*Id.*). Plaintiff had to fend for himself because Defendants Culpepper and Junior were not at their assigned posts in C-Dorm. (*Id.*). He did not know who stabbed him so he could not tell Defendants Raybon and Bolar, who became angry with him because he could not identify his assailant. (*Id.*). Plaintiff was charged with a disciplinary for fighting with a weapon, (but he was not informed of this charge and it being nolle prossed until later when he was incarcerated at Donaldson Correctional Facility (Donaldson) where he was in segregation for over 200 days, ending October 2017). (*Id.* at 4, 5).

Several days later, Plaintiff was charged with two more disciplinaries for fighting without a weapon and for possession of a knife. (*Id.* at 4). Defendant Zachary Hard, the cubical officer, was the arresting officer as he allegedly saw from the cubicle's window that Plaintiff was in possession of knife and fighting with a group of inmates. (*Id.*).

2

Defendant Bolar found Plaintiff guilty of these two disciplinaries based on Defendant Hard's statements, which caused Plaintiff to be placed in segregation. (*Id.* at 5). While in segregation, Plaintiff obtained Defendant Hard's notarized affidavit which stated that he did not see Plaintiff in possession of a knife or fighting and that he did not make the statements which formed the bases of the hearing officer's guilty verdicts. (*Id.*). Plaintiff filed grievances with Defendants Raybon and Stewart, but no action was taken except for Defendant Raybon stating that he wanted to know who the assailants were. (*Id.*).

Plaintiff claims that Defendants violated his due process rights and his equal protection rights. (*Id.* at 7-9, 11). For relief, Plaintiff wants his disciplinary reports expunged and punitive damages from each Defendant in the amount of $250,000. (*Id.* at 11).

B. <u>Disciplinary Reports</u>. (Doc. 10).

Because the Court's screening of the Amended Complaint could not be completed due to the absence of information, it ordered Plaintiff to file the disciplinary reports for the two disciplinary convictions he was challenging. (Doc. 9). Plaintiff filed those disciplinary reports. (Doc. 10).

The disciplinary report for fighting without a weapon

reflects that Plaintiff was found guilty and was sentenced to a 45-day loss of canteen, telephone, and visiting privileges and 30 days in disciplinary segregation. (*Id.* at 5). Defendant Raybon, as warden, approved this disciplinary on April 3, 2017. (*Id.*). And the disciplinary report for the unauthorized possession of a weapon reflects that Plaintiff was found guilty and was sentenced to a 45-day loss of canteen, telephone, and visiting privileges and to 45 days in disciplinary segregation. (*Id.* at 9). Defendant Raybon, as warden, approved the disciplinary and its sentence on March 29, 2017. (*Id.* at 9). In each disciplinary report, dates are provided for when Plaintiff would begin to serve each part of his sentences. (*Id.* at 5, 9).

In his unsigned statement submitted with the disciplinary reports, Plaintiff stated that he was submitting a copy of the report of the nolle-prossed disciplinary for informational purposes. (*Id.* at 1). This copy was not submitted with the other disciplinary reports.

II.  <u>Standards of Review Under 28 U.S.C. § 1915(e)(2)(B)</u>.

Because Plaintiff is proceeding *in forma pauperis*, the Court is reviewing the Amended Complaint (Doc. 4) under 28 U.S.C. § 1915(e)(2)(B). Under § 1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis in

law or fact." *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827 (1989). A claim is frivolous as a matter of law where, *inter alia,* the defendants are immune from suit, *id.* at 327, or the claim seeks to enforce a right that clearly does not exist. *Id.*

Moreover, a complaint may be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted. *Mitchell v. Farcass,* 112 F.3d 1483, 1490 (11th Cir. 1997). To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations must show plausibility. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 557, 127 S.Ct. 1955 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" *Twombly,* 550 U.S. at 555, 557 (second brackets in original). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678.

When considering a *pro se* litigant's allegations, a court holds them to a more lenient standard than those of an attorney, *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998), but it does not have "license . . . to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Investments v. Cty. of Escambia, Fla.,* 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by Iqbal,* 556 U.S. 662 (2009). Furthermore, a court treats as true factual allegations, but it does not treat as true conclusory assertions or a recitation of a cause of action's elements. *Iqbal,* 556 U.S. at 681. In addition, a *pro se* litigant "is subject to the relevant law and rules of court including the Federal Rules of Civil Procedure." *Moon v. Newsome,* 863 F.2d 835, 837 (11th Cir.), *cert. denied,* 493 U.S. 863 (1989).

III. <u>Analysis</u>.

    A. <u>Due Process Claims</u>.

In order for Plaintiff to state a § 1983 claim against a Defendant, he must show a violation of his rights under the Constitution or laws of the United States by a person acting under color of state law. *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992). Defendants by virtue of their employment with the Alabama Department of Corrections act under color of state law; therefore, the first element is satisfied. The second

6

element requires Plaintiff to demonstrate that a Defendant violated his constitutional or federal rights. Plaintiff, however, has not shown in his Amended Complaint that his constitutional rights have been violated.

In his allegations, Plaintiff challenges the constitutionality of his two disciplinaries.

> The Supreme Court has identified two circumstances in which a prisoner, an individual already deprived of his liberty in the ordinary sense, can be further deprived of his liberty such that due process is required. "The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court. *See Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995); *see, e.g., Vitek v. Jones,* 445 U.S. 480, 492-93, 100 S.Ct. 1254, 1263-64, 63 L.Ed.2d 552 (1980) (holding that a prisoner is entitled to due process prior to being transferred to a mental hospital). The second is when the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' *Sandin*, 515 U.S. at 484, 115 S.Ct. at 2300; *see, e.g., Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974) (prisoners may not be deprived of statutory 'good-time credits' without due process). . . .

*Walker v. Loman,* 2006 WL 3327663, at *2 (M.D. Ala. 2006) (unpublished).

In the context of a disciplinary, in order to show a

violation of a constitutional right, a plaintiff must demonstrate that he has a liberty interest to which due process attaches and that he did not receive the required due process. *Sandin v. Conner*, 515 U.S. 472, 482-83,115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995).  In *Sandin*, the Supreme Court held that there is no right inherent in the Constitution to be free from disciplinary segregation.  *Id.* at 487, 115 S.Ct. at 2302.  Then, turning to the other source for a liberty interest, the Court examined whether the State created a liberty interest to be free from disciplinary segregation.  *Id.* at 485, 115 S.Ct. at 2301.  The Court concluded that mere confinement to disciplinary segregation was a type of discipline that should be expected by an inmate as an incident to his criminal sentence.  *Id.*  However, the Court reasoned a liberty interest could be found when "an atypical and significant hardship [is imposed] on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484, 115 S.Ct. at 2300.  In applying its reasoning to the action before it, the Court found that the prisoner did not have liberty interest that was implicated by his 30-day confinement to disciplinary segregation as his confinement to disciplinary segregation was not a dramatic departure from his criminal sentence and "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty

interest." *Id.* at 485-86. Thus, pursuant to *Sandin*, an inmate confined to a short term of disciplinary segregation has no protected liberty interest to which the due process protections apply unless "an atypical and significant hardship [is imposed] on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484, 115 S.Ct. at 2300.

Thus, the *Sandin* Court concluded that a creation of a liberty interest, which would have entitled the inmate to due process protections, did not occur, as "[t]he regime to which he was subjected as a result of the misconduct hearing was within the range of confinement to be normally expected for one serving [his sentence.]" *Id.* at 487, 115 S.Ct. at 2302; *cf. Wilkinson v. Austin*, 545 U.S. 209, 224, 125 S.Ct. 2384, 2395, 162 L.Ed.2d 174 (2005) (due process was required because the Ohio inmate had a liberty interest to avoid placement in the supermax prison due to collective conditions imposing an atypical and significant hardship on an inmate).

Plaintiff merely contests his disciplinary convictions and their sentences because the arresting officer gave him an affidavit that contradicts the officer's prior statement in the disciplinary hearing, which served as the bases for the guilty verdicts. (Doc. 4). This affidavit as well as other factual information has not been provided by Plaintiff. However,

9

Plaintiff's confinement to disciplinary segregation for 30 or 45 days did not deprive Plaintiff of a liberty interest inherent in the Constitution. *Sandin*, 515 U.S. at 484, 115 S.Ct. at 2300. Nor did this confinement deprive him of a state-created liberty interest. *Id.* at 487, 115 S.Ct. at 2302 (a 30-day disciplinary sentence did not impinge upon a state-created liberty interest); *Lekas v. Briley*, 405 F.3d 602, 611 (7th Cir. 2005) (confinement to 90 days to disciplinary segregation was not an atypical and significant hardship); *Rodgers v. Singletary*, 142 F.3d 1252, 1253 (11th Cir. 1998) (confinement to administrative segregation for two months was not a deprivation of constitutionally protected liberty interest); *Morefield v. Smith*, 404 F. App'x 443, 446 (11th Cir. 2010) (a four-year confinement in administrative segregation, although lengthy, did not create a liberty interest considering that the conditions of confinement were similar to those in the general population); *cf. Williams v. Fountain*, 77 F.3d 372, 374 n.3 (11th Cir.) (a 12-month sentence of solitary confinement "'represent[s] substantially more atypical and significant hardship[s] . . . in relation to the ordinary incidents of prison life,' [and] we assume that [a prisoner suffering such] a liberty deprivation [is] entitled to due process"), *cert. denied*, 519 U.S. 952 (1996); *Magluta v. Samples*, 375 F.3d 1269, 1282 (11th Cir. 2004) (the harsh

conditions in solitary confinement under which he was held for 500 days amounted to an atypical and significant hardship to which due process attached).

Thus, the undersigned finds that Plaintiff's disciplinary segregation sentences of 30 days and 45 days did not result in a deprivation of a constitutional right or a state-created liberty interest.[1]  Because the Court finds that Plaintiff has no liberty interest to which due process attaches, there is no need for the Court to address whether the requirements of due process were met.  *See McKeithan v. Jones*, 212 F. App'x 129, 130 (3d Cir. 2007) (unpublished) (finding that six months' confinement to disciplinary segregation did not violate a protected interest and, therefore, *Sandin* prohibited the court from considering whether due process satisfied); *Hartley v. McNeil*, 2008 WL 1844416, at *3 (N.D. Fla. 2008) (unpublished) (same).

The other aspect of Plaintiff's disciplinary sentences is a deprivation of his visitation, canteen, and telephone

---

[1] The Court notes that Plaintiff alleged that he was held in disciplinary segregation at Donaldson for two hundred days. Plaintiff, however, did not inform the Court of the relevance of this term of confinement to the two disciplinary sentences that he challenges in this action or how any of the Defendants who are located at Holman would be responsible for how any disciplinary sentence was served at Donaldson.  *See Zatler v. Wainwright,* 802 F.2d 397, 401 (11th Cir. 1986) (a plaintiff must establish a causal connection between a defendant's actions, orders, customs, or policies and a deprivation of the plaintiff's constitutional rights in order to state a § 1983 claim).

privileges. The Constitution, however, does not grant an inmate a right in visitation, canteen, and telephone privileges. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989) (an inmate does not have a protected interest in visitation arising from the Due Process Clause); *Overton v. Bazzetta*, 539 U.S. 126, 131, 134, 123 S.Ct. 2162, 2167, 2168, 156 L.Ed.2d 162 (2003) (a two-year restriction on visitation privileges for two substance abuse violations did not violate the Constitution because prison confinement requires the surrendering of liberties and privileges enjoyed by other citizens, with free association being least compatible right to prison confinement); *Charriez v. Secretary, Fla. Dep't of Corr.*, 596 F. App'x 890, 894 (11th Cir. 2015) (unpublished) (a one-year loss of visitation privileges did not implicate the deprivation of a constitutional right or a state-created liberty interest as a prisoner has no right to unfettered visitation); *Moore v. Pemberton*, 110 F.3d 22, 23 (7th Cir. 1997) (no loss of a liberty or property interest occurred when prisoner received as part of his disciplinary punishment a two-week loss of commissary privileges); *Walker v. Loman*, 2006 WL 3327663, at *1, *3 (M.D. Ala. 2006) (unpublished) (the 90-day loss of store, telephone, and visitation privileges, recommended custody increase, and referral for possible free-world

prosecution did not result in the deprivation of a liberty interest based on state-created right or on the Due Process Clause).

In addition, Alabama state courts have determined a prisoner does not have a state-created liberty interest in store, telephone and visitation privileges.  *Dumas v. State*, 675 So.2d 87, 88 (Ala. Crim. App. 1995).  An inmate's ability to visit, to shop, and to use the telephone is heavily restricted while in prison, as are most aspects of an inmate's life.  *Sandin*, 515 U.S. at 485, 115 S.Ct. at 2301.  Moreover, the further restriction of these privileges for a short period of time is a less severe form of discipline than confinement to disciplinary segregation.  Such restriction, therefore, is not "atypical," nor is it a "significant hardship" under the *Sandin* analysis and is a type of discipline that should be expected by a prisoner as an incident to his criminal sentence.  *See Id.* at 475, 485, 115 S.Ct. at 2296, 2301.  Plaintiff's allegations do not contend otherwise.  Thus, Plaintiff does not have a liberty interest in canteen, visitation, and telephone privileges.

Inasmuch as Plaintiff failed to establish a liberty interest of which he was deprived, he has failed to state a deprivation of his due process rights.

    B.   <u>Equal Protection Claim</u>.

Plaintiff asserts in a conclusory manner that his equal protection rights have been violated.  In his allegations, he did not identify the discriminatory treatment and the similarities he shares with another inmate who received the unidentified favorable treatment.

"The Equal Protection Clause of the Fourteenth Amendment requires the government to treat similarly situated people alike."  *Hernandez v. Fla. Dep't of Corr.*, 281 F. App'x 862, 867 (11th Cir.), *cert. denied,* 555 U.S. 1184 (2009).  In order for a prisoner to establish an equal protection claim, he must allege: "(1) he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race."  *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001) (quotation omitted).  In the prison context, interests that are protected by the Constitution from invidious discrimination are "race, religion, national origin, poverty or some other constitutionally protected interest."  *Damiano v. Fla. Parole & Prob. Comm'n*, 785 F.2d 929, 932—33 (11th Cir. 1986); *see Cruz v. Skelton*, 543 F.2d 86, 92-93 (5th Cir. 1976) (invidious intent is required to state an equal protection claim as mere statistical disparity is insufficient), *cert. denied*, 433 U.S. 911 (1977)).

In the present action, Plaintiff provided no facts to

14

support his assertion of an equal protection violation. He merely asserts that his "rights to equal protec[tion]" were violated. (Doc. 4 at 7-9). In the absence of supporting facts, Plaintiff is prevented from stating a claim for a deprivation of his equal protection rights.

IV. Conclusion.

Based upon the foregoing reasons, it is recommended that this action be dismissed without prejudice, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for fail to state a claim upon which relief may be granted.

**NOTICE OF RIGHT TO FILE OBJECTIONS**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); S.D. Ala. Gen.LR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the

15

party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

    DONE this 3rd day of September, 2019.

                                          s/ BERT W. MILLING, JR.
                                          UNITED STATES MAGISTRATE JUDGE